UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) **UNITED STATES OF AMERICA'S** ) **TRIAL BRIEF** ) |
| LOUIS A. RUPP, II in his individual capacity; and LOUIS A. RUPP, II and PAULINE RUPP in their capacity as trustees for the Louis A. Rupp II Revocable Trust, | ) Case No. 4:19-cv-2644-SEP ) ) ) ) |
| Defendants. | ) ) ) |

The Court ruled on May 28, 2021 that Defendants, the owners and manager of residential rental apartment properties in St. Louis, violated the federal Fair Housing Act, 42 U.S.C. § 3601 *et seq*. (FHA), which prohibits housing discrimination on the basis of familial status. Memorandum and Order, ECF No. 56 (granting United States' motion for summary judgment as to liability). The only remaining issue for the jury is damages.

The United States alleges that Defendants' former tenants—Laura Erwin, Martin Teal, and their two children (the Erwin-Teals)—were harmed by Defendants' violations of the FHA, and seeks compensatory and punitive damages on their behalf. *See* Complaint, ECF No. 1, ¶ 70, Prayer for Relief at p. 13, ¶ c, ¶ d. During the trial set for August 16, 2021, the United States will present documents and testimonial evidence establishing the economic costs and emotional distress that Defendants' discriminatory conduct caused the Erwin-Teals and will ask the jury to award compensatory damages for that harm. Additionally, the United States will present evidence that Defendant Louis A. Rupp, II was recklessly indifferent to his tenants' federally protected rights under the FHA and will ask the jury to require him to pay the Erwin-Teals punitive damages.

1

**BACKGROUND AND FACTUAL SUMMARY**

A.     **UNCONTESTED FACTS LAID OUT IN THE COURT'S MAY 28, 2021 MEMORANDUM AND ORDER**

In 2016, Ms. Erwin and Mr. Teal applied to lease an apartment from Mr. Rupp. Memorandum and Order, ECF No. 56 at 1.[1] Despite the application's notice that the presence of children would void the lease, Ms. Erwin and Mr. Teal wrote on their rental application that they had a six-year old son, "B," who would be living with them.[2] *Id.* After reviewing it, Mr. Rupp leased a two-bedroom apartment to Ms. Erwin, Ms. Teal, and "B" at 6626 Devonshire Avenue in St. Louis, Missouri. *Id*. The lease ran from March 1, 2016 to February 28, 2017. *Id*. The lease stated "NO CHILDREN" and referred to that prohibition again in a handwritten addendum that stated, "The lease contract is being entered on a trial basis in consideration of the 'NO CHILDREN' clause in the contract . . . ." *Id*. (Mr. Rupp testified in his deposition that he included additional terms in leases for tenants with young children. *Id*. at 7–8.) Throughout their tenancy, Ms. Erwin and Mr. Teal often paid their rent late. *Id*. at 1. Mr. Rupp imposed late fees for the late rent payments, which Ms. Erwin and Mr. Teal paid in full. *Id*. Notwithstanding the late rent payments, the Erwin-Teals remained as tenants on a month-to-month basis after their lease expired on February 28, 2017. *Id*.

On May 8, 2017, Mr. Rupp offered Ms. Erwin and Mr. Teal a lease renewal agreement incorporating the terms of the original lease. *Id.*

Six weeks into the new lease term, on June 12, 2017, Mr. Rupp sent Ms. Erwin and Mr. Teal a notice to vacate. *Id.* at 1-2. The notice stated that the Erwin-Teals had underpaid the last

---

[1] For simplicity, record citations are omitted in this section.

[2] The United States is using the minor children's initials in its written public filings, but anticipates using the children's full first names at trial.

late fee by $15. *Id*. at 2. "More importantly," the notice stated, Mr. Rupp had learned that the Erwin-Teals' son had been living in the apartment full-time during their tenancy, and that Ms. Erwin had given birth to another child. *Id*. "In light of [that] situation and [their] total disregard for the terms and conditions" of the lease, Mr. Rupp stated that he was terminating their lease and they had to vacate no later than July 31, 2017. *Id.* The lease terms enumerated in the June 12, 2017 notice to vacate are "**NO PETS, NO CHILDREN, AND NO HEAVY APPLICANCES**." *Id*.

Ms. Erwin and Mr. Teal subsequently filed a housing discrimination complaint with the United States Department of Housing and Urban Development (HUD). *Id.* HUD investigated the Erwin-Teals' complaint and issued a Charge of Discrimination on July 11, 2019. *Id*. The United States initiated this action after Defendants elected to resolve the charges in federal court. *Id*.

**B.    ANTICIPATED FACTS AT TRIAL**

Ms. Erwin and Mr. Teal are expected to testify to the harm that Defendants' unlawful termination of their lease caused themselves and their children—including the economic costs, emotional distress, and other intangible injuries they suffered from receiving the notice to vacate less than three weeks after having their infant, preparing for the move, and losing their home.

The United States will call Brittany Chapman, the former investigator with the Missouri Commission on Human Rights who investigated the Erwin-Teals' fair housing complaint, as a witness. Ms. Chapman may testify to her observations about both Ms. Erwin and Mr. Rupp when she interviewed each of them shortly after the Erwin-Teals had vacated their unit.

Finally, the United States intends to call Mr. Rupp as an adverse witness in its case in chief and expects his testimony to establish that he had reckless or callous indifference to the Erwin-Teals federally protected rights under the FHA's familial status discrimination prohibitions. The United States also expects Mr. Rupp to testify to his over 40 years of experience as a residential

3

landlord in St. Louis, his ownership of eight multi-unit rental properties in St. Louis, and his financial resources.

### UNITED STATES' DAMAGES CLAIM

Because the Court granted summary judgment in the United States' favor, the sole issue for the jury to decide is damages.[3] Both compensatory and punitive damages are available and warranted here, for the reasons explained below.

#### A.   DAMAGES IN HUD "ELECTION" CASES

Victims of housing discrimination ("aggrieved person[s]") have the right to file a complaint with HUD within one year of the discriminatory conduct, and HUD must investigate and/or refer to a substantially equivalent State or local agency. 42 U.S.C. §§ 3602(i), 3610(a), 3610(f). Upon HUD's determination that reasonable cause exists to believe a discriminatory housing practice has occurred, HUD must issue a charge of discrimination on behalf of the aggrieved person(s) against the respondent(s), and the aggrieved person(s) or respondent(s) may make an "election" to have the matter resolved in federal court. *Id*. §§ 3610(g)(2)(A), 3612(a). In such an "election" case, HUD shall authorize the Attorney General to file a civil action "on behalf of the aggrieved person in a United States district court seeking relief." *Id*. § 3612(o)(1). In other words, the United States Department of Justice "sue[s] [defendants] under the Fair Housing Act, 42 U.S.C. § 3612(o) (1988), seeking declaratory and injunctive relief and damages on behalf of [aggrieved persons]." *White v. Pence*, 961 F.2d 776, 777 (8th Cir. 1992). In such "election" cases, the United States may recover "any relief which a court could grant . . . in a civil action" by a private aggrieved person

---

[3] *See, e.g. Monsanto Co. v. McFarling*, No. 4:00-CV-84-CDP, 2002 WL 32069634, at *1, *4–5 (E.D. Mo. Nov. 5, 2002) (granting summary judgement for plaintiff on liability for two counts and ordering a jury trial on those same two counts to determine damages ).

4

in federal or State court under 42 U.S.C. § 3613, which includes "actual and punitive damages." 42 U.S.C. §§ 3612(o)(3), 3613(c)(1).

    **B.**    **COMPENSATORY DAMAGES**

The United States will prove that Ms. Erwin, Mr. Teal, and their children experienced economic loss and emotional distress due to Defendants' discriminatory conduct and seeks actual (compensatory) damages to compensate them for this harm.

Compensatory damages may be awarded under the FHA for economic losses and expenses, but are not limited to economic or monetary expenses.[4] Victims of housing discrimination are also entitled to compensatory damages for physical or emotional harm due to a defendant's conduct— including emotional distress and other intangible injuries.[5] To recover damages for emotional distress, a person "must actually prove that he suffers from emotional distress and that the discrimination caused that distress."[6] Emotional distress may be established through witness testimony or inferred from the circumstances; it is not necessary for a victim to present evidence

---

[4] *See, e.g.*, 42 U.S.C. §§ 3612(o)(3), 3613(c)(1) (authorizing actual and punitive damages in HUD "election" and other FHA cases); *Krueger v. Cuomo*, 115 F.3d 487, 492–93 (7th Cir. 1997) (affirming an Administrative Law Judge's award of moving and other expenses and emotional distress damages to aggrieved individual); *Green v. Century 21*, 740 F.2d 460, 464 (6th Cir. 1984) (awarding compensatory damages under FHA for "mental anguish, humiliation, embarrassment, and emotional stress" and out-of-pocket losses); *Woods-Drake v. Lundy*, 667 F.2d 1198, 1203 (5th Cir. 1982) (directing district court to carefully examine plaintiff's out-of-pocket expenses "incurred by them in locating another dwelling and in moving their belongings" and stating that "[i]t may be presumed that some degree of emotional distress will accompany" a discriminatory eviction).

[5] *See, e.g.*, *Barker v. Niles Bolton Assocs., Inc.*, 316 Fed. Appx. 933, 939–40 (11th Cir. 2009) (affirming district court's jury instruction on emotional distress damages under FHA); *United States v. Balistrieri*, 981 F.2d 916, 931–32 (7th Cir. 1992) ("We have long held that emotional distress caused by housing discrimination is a compensable injury under the Fair Housing Act."); *Green*, 740 F.2d at 464; *Smith v. Anchor Bldg. Corp.*, 536 F.2d 231, 236 (8th Cir. 1976) (stating that "actual damages may be awarded for emotional distress and humiliation" under FHA).

[6] *Balistrieri*, 981 F.2d at 931.

5

of economic loss or medical evidence of mental or physical symptoms or medical or psychological treatment.[7] The fact that "emotional suffering . . . cannot be calculated with mathematical precision" does not prevent the jury from determining a dollar amount for emotional distress damages.[8]

Here, the United States seeks compensatory damages for the Erwin-Teals' economic losses or injuries due to Defendants' discriminatory conduct, including the following, which it will prove at trial: (1) moving time and expenses, (2) loss of their $750 security deposit, (3) the cost of a storage unit rental, and (4) time to pursue their fair housing complaint.[9] The United States also seeks compensatory damages for the emotional distress and other intangible injuries that Ms. Erwin, Mr. Teal, and their children experienced.[10] The United States will prove this harm at trial through testimony by Ms. Erwin and Mr. Teal about the stress, embarrassment, and other

---

[7] *Balistrieri*, 981 F.2d at 933 (stating that to determine emotional distress damages, jury can evaluate "the humiliation inherent in the circumstances and the witness's explanation of his injury"); *Williams v. Trans World Airlines, Inc.*, 660 F.2d 1267, 1272–73 (8th Cir. 1981) (explaining that to recover for mental distress damages for civil rights violation, "specific proof of out-of-pocket losses or medical testimony, although relevant, is not necessary," and "plaintiff's own testimony may be solely sufficient to establish humiliation or mental distress" (citations omitted)); *Smith*, 536 F.2d at 236 (citing, as evidence of emotional distress damages in housing discrimination case, victim's testimony that she was "embarrassed" and "hurt and humiliated"); *Seaton v. Sky Realty Co., Inc.*, 491 F.2d 634, 636 (7th Cir. 1974) (finding that award of actual damages under FHA was appropriate for humiliation caused by discriminatory conduct and that humiliation could "be inferred from the circumstances as well as established by the testimony").

[8] *See, e.g., United States v. Matusoff Rental Co.*, 494 F. Supp. 2d 740, 749 (S.D. Ohio 2007) (explaining that "emotional suffering, which cannot be calculated with mathematical precision, constitutes a major component of the harm experienced by . . . victims" of housing discrimination).

[9] *See, e.g.,* ECF No. 35-2, Pl. United States' Objections and Responses to Defs.' Interrogatories, Responses No. 12 and 13 (describing Ms. Erwin's and Mr. Teal's economic losses and emotional distress).

[10] *Id*.

emotional distress their family experienced by losing their home while caring for a newborn infant as a result of Defendants' unlawful termination of their lease.

C.   **PUNITIVE DAMAGES**

The United States also seeks punitive damages against Mr. Rupp and will prove that he had a reckless and callous indifference to the Erwin-Teals' federally protected rights.

The FHA permits recovery of punitive damages by victims of discriminatory housing practices.[11] Punitive damages "are appropriate in a federal civil rights action 'when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'"[12] "'[R]eckless indifference'" pertain[s] to the [defendant's] knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination.'"[13] Further, it is not necessary to show that a defendant's conduct was "egregious" to warrant punitive damages under the FHA; rather, "it is sufficient that a defendant 'discriminate in the face of a perceived risk that its actions will violate federal law to be liable in punitive damages.'"[14]

In this case, the record evidence and additional evidence the United States will present at trial describe above justifies a punitive damage instruction. The Court has already ruled that

---

[11] 42 U.S.C. §§ 3612(o)(3), 3613(c)(1) (authorizing actual and punitive damages in HUD "election" and other FHA cases); *Badami v. Flood*, 214 F.3d 994, 997 (8th Cir. 2000) (punitive damages are available in FHA cases under same standard as in Title VII cases); *see also, e.g., Quigley v. Winter*, 598 F.3d 938, 952 (8th Cir. 2010) (similar).

[12] *Badami*, 214 F.3d at 997 (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)).

[13] *Id.* (quoting *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 119 S.Ct. 2118, 2124 (1999)).

[14] *Badami*, 214 F.3d at 997 (quoting *Kolstad*, 119 S.Ct. at 2125, 2126); *see also, e.g., Preferred Properties, Inc. v. Indian River Estates, Inc.*, 276 F.3d 790, 799 (6th Cir. 2002) (award of punitive damages under FHA "is based on the defendant's state of mind and does not require egregious or outrageous behavior" (citing *Smith*, 461 U.S. at 56).

Defendants violated three provisions of the FHA, 42 U.S.C. §§ 3604(a), (b), and (c), including by using a lease and application form that prohibited children, using different lease terms for tenants with children, and terminating the Erwin-Teals' lease because of their familial status in 2016 and 2017. Memorandum and Order, ECF No. 56 at 6-9. The evidence surrounding this discriminatory conduct leads to an inference that Mr. Rupp knew, or at least perceived a risk, at that time that his conduct may be in violation of federal law.

First, federal law has prohibited familial status discrimination in housing since 1989.[15] Yet, in 2016 and 2017, Mr. Rupp was still using the same lease agreement and application form he had used since the 1970s—which predated the familial status protections afforded to renters under the FHA—and never made any changes to that lease to bring it into compliance with the FHA.[16] And Mr. Rupp has been a residential landlord in St. Louis for over 40 years, owns and operates eight four-unit properties, has plentiful financial resources, and has extensive experience with legal proceedings and legal requirements involved in rental property management.[17] Together, these facts suggest that Mr. Rupp had the requisite knowledge to be held liable for punitive damages.[18]

---

[15] Pub. L. 100–430 (HR 1158) Section 13(a), September 13, 1988, 102 Stat. 1619; *see also* Joint Stipulation of Uncontested Facts, ECF No. 63, Stipulated Fact ¶ 10.

[16] Rupp Deposition Transcript, ECF No. 40-23, at 139-141.

[17] Rupp Deposition Transcript, ECF No. 40-23, at 14-16; Joint Stipulation of Uncontested Facts, ECF No. 63, Stipulated Fact ¶¶ 12-25.

[18] *See Preferred Properties*, 276 F.3d at 800 ("[Defendant] has been involved in the real estate industry for more than twenty years, during which time he has rented property to persons with disabilities. These facts suggest that [defendant] had the requisite knowledge to be held liable for punitive damages . . . ."); *see also, e.g., Quigley*, 598 F.3d at 953 (district court did not err in submitting punitive damage instruction to jury where defendant "had been a landlord for many years and managed many properties" and knew sexual harassment was unlawful).

Second, the anticipated testimony of Ms. Chapman, the Missouri Commission on Human Rights Investigator, that Mr. Rupp continued to make discriminatory comments during his interview[19] further supports punitive damages.[20]

This evidence is more than sufficient that a reasonable jury could award punitive damages for Defendants' reckless indifference to the Erwin-Teals' federally protected rights under the FHA.

At trial, the United States will introduce evidence of Defendants' wealth, including financial accounts and real estate holdings and debt.[21] A defendant's financial condition is a relevant factor juries consider in assessing the appropriate amount of punitive damages to award, if punitive damages are warranted.[22]

### ANTICIPATED SUBSTANTIVE OR PROCEDURAL PROBLEMS

The United States anticipates few substantive or procedural problems at trial. The Parties have largely been able to work out any potential disagreements without Court involvement. Potential problems that may arise include the following:

---

[19] *See, e.g.,* Declaration of Brittany Chapman, ECF No. 42-9, at ¶¶ 8-10.

[20] *United States v. Hylton*, 944 F. Supp. 2d 176, 198 (D. Conn. 2013) (punitive damages appropriate where landlord "showed no remorse for his conduct when he continued to make discriminatory comments to the HUD investigator").

[21] Joint Stipulation of Uncontested Facts, ECF No. 63, Stipulated Fact ¶¶ 12-25.

[22] *See, e.g.*, *United States v. Big D Enterprises, Inc.*, 184 F.3d 924, 932 (8th Cir. 1999) ("the assessment of punitive damages under the FHA is governed by federal rather than state law . . . [u]nder federal law, evidence of a defendant's financial worth is traditionally admissible for the purpose of evaluating the amount of punitive damages that should be awarded.") (citing *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 270 (1981)). *See also* 8th Cir. Model Jury Instruction 5.72 (instructing jurors to consider "[w]hat amount of punitive damages . . . is needed, considering the defendant's financial condition . . ." in model instruction for Title VII cases). Courts routinely apply Title VII doctrine to Fair Housing Act cases. *See, e.g.*, Memorandum and Order, ECF No. 56, at 6 (citations omitted).

1. The Court's legal rulings that Defendants violated the FHA are the law of the case and should continue to govern the same issues at trial.[23] The United States anticipates Defendants may attempt to argue that their discriminatory termination of the Erwin-Teals' lease was justified, for example, by Mr. Rupp's belief about their apartment's occupancy limit, the Erwin-Teals' late rent payments, and/or Mr. Rupp's filing of a late rent affidavit in state court after having already terminated the lease. Defendants may also attempt to justify their discriminatory leases by putting forth, for example, character evidence about Mr. Rupp, or evidence that he subsequently corrected the lease after the Erwin-Teals filed their HUD complaint. The United States may file a motion in limine to exclude such evidence or other similar evidence as irrelevant or on other grounds, as appropriate.

2. The Parties disagree about whether the United States should be permitted to introduce photographs and one video of the Erwin-Teal family around the time their second child was born. *See* Plaintiff's Motion Not to Exclude United States' Proposed Demonstrative Exhibits as Untimely Disclosed, ECF No. 58; *see also* ECF No. 61 (Defendants' response).

3. The Parties have stipulated that Mrs. Rupp is unavailable for trial, and has been unavailable during litigation, because of her health. Joint Stipulation of Uncontested Facts, ECF No. 63, Stipulated Fact ¶ 26. The United States may file a motion in limine arguing that additional detail about Mrs. Rupp's specific health conditions should be excluded.

---

[23] *See, e.g.*, *Morris v. American Nat'l Can Corp.*, 988 F.2d 50, 52 (8th Cir. 1993) (under "law of the case" doctrine, "'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case'") (citation omitted); *Gomez v. Tyson Foods, Inc.*, 2013 WL 1090362, at *1 (D. Neb. March 15, 2013) ("The liability issue has been resolved by the court. As hard as it is for [defendant] to accept that fact, it is the law of the case.").

4. The United States may seek to use demonstrative aids such as a timeline or chart summarizing Mr. Rupp's financial records during its opening statement, witness testimony, and/or closing argument. These aids would not themselves be admitted into evidence but simply summarize evidence. The United States does not necessarily anticipate any problems with such aids but wishes to notify the Court and Defendants.

5. The United States may file additional motions in limine depending on Defendants' pre-trial disclosures.

## CONCLUSION

The United States appreciates this opportunity to lay out the legal and factual issues, authorities relied on, and anticipated problems at trial, and looks forward to discussing these issues further with the Court and Defendants at the pre-trial conference on August 12, 2021.

Dated: July 27, 2021

Respectfully submitted by,

For the United States:

    */s/ Kathryn Legomsky*
SAMEENA SHINA MAJEED
Chief
TIMOTHY J. MORAN
Deputy Chief
KATHRYN LEGOMSKY
California Bar No. 275571
Trial Attorney
Housing and Civil Enforcement Section
Civil Rights Division
U.S. Department of Justice
4 Constitution Square
150 M Street NE, Room 8.1127
Washington, DC 20002
Tel (office): (202) 616-2450
Tel (cell): (202) 598-6587
Fax: (202) 514-1116
Kathryn.Legomsky@usdoj.gov

*/s/ Regan Hildebrand*
REGAN HILDEBRAND
Bar No. 6326374 (IL)
Bar No. 57438 (MO)
JOSHUA JONES
Bar No. 61988 (MO)
Assistant United States Attorneys
Thomas F. Eagleton U.S. Courthouse
111 South Tenth Street, 20th Floor
St. Louis, Missouri 63102
Phone: (314) 539-7703
Fax: (314) 539-2287
E-mail: Regan.Hildebrand@usdoj.gov

**Certificate of Service**

      I hereby certify that on July 27, 2021, I electronically filed the foregoing using the Court's Electronic Filing System, which sent notification of such filing to counsel of record.

                                                   */s/ Kathryn Legomsky*
                                                   Kathryn Legomsky
                                                   Attorney
                                                   U.S. Department of Justice