UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

UNITED STATES OF AMERICA,           )
                                    )
            Plaintiff,              )
                                    )
v.                                  )        Case No. 4:19-CV-02644-SEP
                                    )
LOUIS A. RUPP, II, et al.,          )
                                    )
            Defendants.             )

## MEMORANDUM AND ORDER

Before the Court is Defendant's[1] Rule 50 Motion to Set Aside the Punitive Damages Award, or in the Alternative, Defendant's Rule 59 Motion to Reduce the Amount of Punitive Damages Awarded.  Doc. 113.  For the reasons set forth below, the Motion is denied.

### FACTS AND BACKGROUND

In 2016, Laura Erwin and Martin Teal applied to lease an apartment from Defendant. Doc. 56 at 1.  Defendant provided the Erwin-Teals with a lease that included the clause, "NO CHILDREN."  *Id.*  The Erwin-Teals wrote on the application that their six-year-old son would be living with them and returned it to Defendant.  *Id.*  Defendant agreed to lease an apartment to them for a term of one year but stated that the lease was "being entered on a trial basis in consideration of the 'NO CHILDREN' clause[.]"  *Id.*  Throughout the term, the Erwin-Teals often paid their rent late, but the resulting notices threatened only the imposition of late fees, which Plaintiffs paid.  *Id.*  After the lease expired, they remained tenants on a periodic, month-to-month basis.  *Id.*  In May 2017, they accepted an offer from Defendant to renew their lease, which purported to incorporate the terms of the original lease.  *Id.*  Six weeks later, Defendant sent them a notice to vacate the premises by July 31st, stating that they had underpaid their last late fee by $15, and "more importantly," he had learned that their son had been living in the apartment full-time and that Ms. Erwin had recently given birth to a second child.  *Id.* at

---

[1] This case originally included two defendants, Louis and Pauline Rupp, in their capacity as trustees for the Louis A. Rupp II Revocable Trust.  After judgment was entered, and prior to the filing of this Motion, the Court was notified that Pauline Rupp had passed away.  Therefore, Mr. Rupp is now the sole defendant in the case.

1-2.  Defendant concluded that he had "no alternative" but to terminate their lease, due to their "total disregard for the terms and conditions" of the contract.  *Id.* at 2.

The Erwin-Teals filed a complaint with the Department of Housing and Urban Development, which investigated the complaint and issued a Charge of Discrimination on July 11, 2019.  Doc. 56 at 2.  Defendant elected to resolve the complaint in federal court, and the United States subsequently initiated this action.  *Id.*  On May 28, 2021, the Court ruled that Defendant had violated the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, by discriminating against the Erwin-Teals and their two minor children based on familial status.  Doc. 56 at 8. A jury trial was held on the sole issue of damages in August 2021.  Docs. 92, 94, 95.  The evidence included live witness testimony from Ms. Erwin, Mr. Teal, Mr. Rupp, the former Missouri Commission on Human Rights investigator who investigated the Erwin-Teal's HUD complaint, and video deposition testimony of the Erwin-Teals' former neighbors.  Docs. 93, 117, 118.  At both the close of the United States' case and the close of evidence, Defendant moved for judgment as a matter of law.  The Court denied the motions, finding that the inquiry depended "on credibility determinations that are in the proper domain of the jury," and declining to "substitute [its] credibility determination for theirs."  Doc. 117 at 250:3-20; Doc. 118 at 106:12-107:5.  The jury returned a verdict awarding $14,400 in compensatory damages[2] and $60,000 in punitive damages.[3]  Doc. 109.

Defendant now argues that the punitive damages award should be set aside under Federal Rule of Civil Procedure 50(b) because there was not a legally sufficient basis for the Court to submit the issue of punitive damages to the jury.  Doc. 113 at 1.  In the alternative, Defendant argues that the $40,000 in punitive damages awarded to the two children was grossly excessive in violation of the Due Process Clause of the Fourteenth Amendment, and that, pursuant to Federal Rule of Civil Procedure 59(e), the Court should reduce the award from $40,000 to $5,000.  *Id.* at 3.  The United States counters that there was sufficient evidence to submit the issue of punitive damages to the jury and that the resulting award of punitive damages was not excessive.  Doc. 120 at 2, 8.

---

[2] $9,400 was awarded to Ms. Erwin, $3,000 to Mr. Teal, and $1,000 to each of the two children.
[3] $10,000 was awarded to Ms. Erwin, $10,000 to Mr. Teal, and $20,000 to each child.

## LEGAL STANDARD

Federal Rule of Civil Procedure 50(b) allows a party to renew a motion for judgment as a matter of law previously made under Rule 50(a).  In ruling on the motion, a court may allow judgment on the verdict, order a new trial, or direct the entry of judgment as a matter of law.  Fed. R. Civ. Proc. 50(b)(1)–(3).  "The law places a high standard on overturning a jury verdict because of the danger that the jury's rightful province will be invaded when judgment as a matter of law is misused."  *Bavlsik v. General Motors, LLC*, 870 F.3d 800, 805 (8th Cir. 2017) (quotation marks and citation omitted).  "Judgment as a matter of law is appropriate only when all of the evidence points one way and is susceptible of no reasonable inference sustaining the position of the nonmoving party."  *Allstate Indemnity Co. v. Dixon*, 932 F.3d 696, 702 (8th Cir. 2019) (quotation marks and citation omitted).  A court should review all of the evidence in the record and "draw all reasonable inferences in favor of the nonmoving party."  *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000) (citations omitted).  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."  *Id.* (quotation marks and citation omitted).  The court must "deny the motion if reasonable persons could differ as to the conclusions to be drawn from the evidence."  *Bavlsik*, 870 F.3d at 805.

Federal Rule of Civil Procedure 59(e) allows a party to file a motion to alter or amend a judgment on grounds that, among other things, the damages award was excessive.  *See* WRIGHT & MILLER, 11 Fed. Prac. & Proc. Civ. § 2807 (3d ed.).  "A Rule 59(e) motion 'is not intended to routinely give litigants a second bite at the apple, but to afford an opportunity for relief in extraordinary circumstances.'"  *Clemens v. Local One, Serv. Emps. Int'l Union*, 2019 WL 5579584, at n.1 (E.D. Mo. Oct. 29, 2019) (quoting *Barnett v. Roper*, 941 F. Supp. 2d 1099, 1104 (E.D. Mo. 2013)).  "Rule 59(e) motions serve the limited function of correcting manifest errors of law or fact or to present newly discovered evidence, and allow a court to correct its own mistakes in the time immediately following judgment."  *Harris v. United States*, 2018 WL 6305593, at * 1 (E.D. Mo. Dec. 2, 2018) (citing *Innovative Home Health Care, Inc. v. P.T.-O.T. Assocs. of the Black Hills*, 141 F.3d 1284, 1286 (8th Cir. 1998)).

DISCUSSION

## I.  <u>Submission of punitive damages to the jury was proper.</u>

The FHA permits an award of punitive damages for victims of discriminatory housing practices "'when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *Badami v. Flood*, 214 F.3d 994, 997 (8th Cir. 2000) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)).  Jury Instruction No. 19—modeled on Instruction 5.72 of the *Eighth Circuit Model Civil Jury Instructions* (2020)—provided that the jury could award punitive damages against Defendant if they determined that he had "acted with malice or reckless indifference to the rights" of the Erwin-Teals.  Doc. 96 at 28-29.  It further instructed the jury that "Mr. Rupp acted with malice or reckless indifference" if "it has been proved that Mr. Rupp knew his conduct was in violation of the law prohibiting discrimination against families with children in housing, or acted with reckless disregard of that law."  Doc. 96 at 28.

Defendant argues that "the jury lacked a legally sufficient evidentiary basis to find for the claimants on their claim for punitive damages," because "the record was devoid of any evidence concerning Mr. Rupp's knowledge of the Fair Housing Act and, specifically, 42 U.S.C. § 3604 prohibiting discrimination against families with children."  Doc. 113 at 3.  Defendant claims that "the only evidence going to Mr. Rupp's knowledge is that he was ***not*** aware of the prohibition," *id.* at 2, though he neglects to cite any evidence.  Notably, Defendant's Motion addresses only the character of the evidence related to his awareness of the FHA, and specifically of its prohibition of discrimination against families with children; it does not address whether Defendant might have "acted with reckless disregard of the law."  Doc. 96 at 28.

In response, the United States argues that the evidence was sufficient for a reasonable jury to conclude that Defendant knew discrimination on the basis of familial status was unlawful, but also that a showing of actual knowledge was not necessary, because there was sufficient evidence for a reasonable jury to conclude that Defendant acted with reckless disregard of the law.  Doc. 120 at 3-5.

As provided in Instruction No. 19, the jury was allowed to impose punitive damages if it found that Defendant "knew his conduct was in violation of the law . . . *or* acted with reckless disregard of that law."  Doc. 96 at 28 (emphasis added).  "Reckless conduct is not

4

intentional or malicious, nor is it necessarily callous toward the risk of harming others, as opposed to unheedful of it." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 493 (2008). Conduct is reckless if the actor "had reason to know of facts which create a high degree of risk of harm to another, and deliberately proceeds to act, or fail to act, in conscious disregard of, or indifference to, that risk." *Id.* at 493-94 (cleaned up and quotation marks omitted) (quoting Restatement (Second) of Torts § 500 (1965)). Thus, in the FHA context, the Eighth Circuit has counseled that a defendant can be liable for punitive damages if he "discriminate[s] in the face of a perceived risk that [his] actions will violate federal law . . . ." *Badami*, 214 F.3d at 997 (quotation marks and citation omitted).

Based on Defendant's own testimony, he has owned rental properties since the 1970s; he currently owns eight properties comprising 32 units; and he has had more than 100 tenants over his career as a landlord. Doc. 117 at 101:14-102:19, 108:22-109:5. Defendant also testified that, at the time of his unlawful discrimination against the Erwin-Teals, he knew that it was unlawful to discriminate on the basis of race, disability, sex, or religion. *Id.* at 122:20-123:20. Defendant has a mechanical engineering degree and worked as "Director of Packaging" at both Ralston Purina (for 26 years) and a construction firm. *Id.* at 118:9-119:23. He testified that he consumes the news "profusely," *id.* at 119:6-20; that he is aware that "laws change over time," *id.* 120:6-23; and that he has experience with legal requirements related to rental property management, such as inspections, rent and late fees, bookkeeping, taxes, maintenance, and eviction proceedings. *Id.* at 112:22-118:8, 119:6-20, 120:6-23.

Notwithstanding all of the above, Defendant claimed to have been wholly unaware that it was illegal to discriminate on the basis of familial status right up until he became aware of the Erwin-Teals complaint to the Missouri Human Rights Commission. *Id.* at 108:22-109:7. And he denied ever researching "housing discrimination" or "fair housing" between 1990 and 2017. *Id.* at 109:8-112:16.

Based on Defendant's testimony, a reasonable jury could have concluded that he discriminated against families with children in the face of a perceived risk that his actions

violated federal law.[4]  Given his admitted awareness of anti-discrimination law generally and his evident familiarity with other laws governing landlord-tenant relationships, a reasonable factfinder could have found that he "had reason to know" that the categorical exclusion of applicants with children posed "a high degree of risk" of violating prospective tenants' legal rights, and that he acted in "conscious disregard" of that risk.  *Exxon Shipping Co.*, 554 U.S. at 493.  That conclusion would have found support in evidence introduced by the United States that Defendant included the illegal "NO CHILDREN" provision in a lease signed seven months *after* he learned of the Erwin-Teals' FHA complaint against him, *id.* at 92:10-93:7, which arguably contradicted his own testimony, *see* Doc. 118 at 23:17-24:1; 89:15-90:11.[5]

Thus, based on the trial record, a reasonable jury could have found that Defendant acted with reckless disregard of the law in discriminating against the Erwin-Teals on the basis of their family status.  Therefore, the Court's decision to submit the issue of punitive damages to the jury was justified.  Because reasonable minds could differ as to the conclusions to be drawn from the evidence, Defendant has not met the high standard necessary to overturn a jury verdict.  *Bavlsik*, 870 F.3d at 805.  Defendant's Rule 50(b) Motion must therefore be denied.

## II.  The punitive damages award was not excessive.

Defendant argues in the alternative that the jury's verdict should be altered under Federal Rule of Civil Procedure 59(e) to reduce the punitive damages awarded to the two minor children from $20,000 per child to $2,500 per child.  Doc. 113 at 3.  Defendant claims that the punitive damages award was grossly excessive in violation of due process.  Doc. 113 at 3.  Upon consideration of the facts of this case in light of the applicable legal standards, the Court disagrees.

"The Due Process Clause of the Fourteenth Amendment prohibits 'grossly excessive' civil punishment."  *Ondrisek v. Hoffman*, 698 F.3d 1020, 1028 (8th Cir. 2012) (citations

---

[4] Because this finding is sufficient to support its decision to send the question of punitive damages to the jury, the Court declines to consider whether a reasonable jury could have found that Defendant acted with actual knowledge that his conduct violated the FHA.

[5] Defendant's counsel did elicit testimony intended to reconcile the apparent contradiction, Doc. 118 at 94:16-95:2, and this Court does not presume to substitute its own credibility determination for that of the jury.  *See Reeves*, 530 U.S. at 150.  But the United States points to other aspects of his testimony that might have caused a factfinder to doubt Defendant's credibility.  *See* Doc. 120 at 7-8.

omitted).  "[P]unitive damages are grossly excessive if they 'shock the conscience . . . [or] demonstrate a passion or prejudice on the part of the trier of fact.'" *Id.* (quoting *Stogsdill v. Healthmark Partners, LLC*, 377 F.3d 827, 832 (8th Cir. 2004)).  The Supreme Court has provided three "guideposts" to follow when determining whether a punitive damages award was excessive:

> [1] the degree of reprehensibility of the defendant's misconduct;
>
> [2] the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and
>
> [3] the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases.

*State Farm Mutual Auto Ins. Co. v. Campbell*, 538 U.S. 408, 418 (2003) (citing *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996)).

    "The Supreme Court has stated that 'a judgment that is a product of fair procedures is entitled to a strong presumption of validity.'" *Dean v. Olibas*, 129 F.3d 1001, 1006 (8th Cir. 1997) (cleaned up) (quoting *TXO Prod. Corp. v. Alliance Res. Corp.*, 509 U.S. 443, 454 (1993)). Defendant does not dispute the fairness of the procedures employed at his trial.  This Court therefore begins its review of *Gore*'s three guideposts with a presumption that the punitive damages award is constitutional.  *Dean*, 129 F.3d at 1006.

### A. Reprehensibility

    The most important guidepost is the degree of reprehensibility of a defendant's conduct.  *Boerner v. Brown & Williamson Tobacco Co.*, 394 F.3d 594, 602 (8th Cir. 2005) (quoting *Campbell*, 538 U.S. at 419; *Gore*, 517 U.S. at 575).  The degree of reprehensibility of a defendant's conduct is analyzed in light of five factors, including whether:

> [1] the harm caused was physical as opposed to economic;
>
> [2] the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others;
>
> [3] the target of the conduct had financial vulnerability;
>
> [4] the conduct involved repeated actions or was an isolated incident; and
>
> [5] the harm was the result of intentional malice, trickery, or deceit, or mere accident.

*Campbell*, 538 U.S. at 419 (citing *Gore*, 517 U.S. at 576-77).

Applied to this case, the first factor weighs in favor of finding Defendant's conduct reprehensible, because it did cause the Erwin-Teals noneconomic harm. *See, e.g., Dean*, 129 F.3d at 1007 (finding "significant noneconomic harm" where the plaintiff had been removed from his home, detained against his will, and required to attend court hearings on two different days); *Campbell*, 538 U.S. at 426 (fact that "harm arose from a transaction in the economic realm, not from some physical assault or trauma [and] there were no physical injuries" militated against reprehensibility). Most notably, the Erwin-Teals were required to physically move out of their home. They were not forcibly removed from their home by the police as in *Dean*, but the Erwin-Teals—a family of 4, including a newborn—were permanently evicted, not just temporarily removed as in *Dean*, and they had to quickly find a new place to live and then pack and move their belongings. *See, e.g.*, Doc. 116 at 198:24-199:9. In addition, Ms. Erwin testified that she had planned to take two-and-a-half months off work to recover from her C-section and bond with both children, but because the family needed proof of income to find a new apartment, she had to go back "about five weeks or so after [the baby] was born." Doc. 116 at 182:7-22; 197:9-198:17. Such noneconomic harms support a finding of reprehensibility.

The second factor also favors reprehensibility. Evicting the Erwin-Teals shortly after the arrival of their second child by C-section does evince indifference to or reckless disregard for the health and safety of at least the recently delivered mother and the newborn, if not also the firstborn child, who was still very young. And that conclusion is only bolstered by Defendant's admitted awareness of the Erwin-Teals' financial vulnerability, which is the third factor supporting reprehensibility. Doc. 113 at 5.[6]

The fourth factor—whether "the conduct involved repeated actions or was an isolated incident"—also supports finding Defendant's conduct reprehensible. Defendant admits to violating the FHA's prohibition of discrimination against families with children consistently for more than 30 years. Defendant points to the lack of evidence that he had ever before been accused of violating the FHA. Doc. 113 at 5. But he also admitted to having consistently used the "NO CHILDREN" clause in *all* of his leases for more than four decades—

---

[6] Ms. Erwin testified that they had to stay with her father and stepmother for "about seven months" because they needed to "save[] up enough money to move out." Doc. 116 at 206:15-9.

three decades of which post-dated the enactment of the FHA's prohibition on familial status discrimination. Doc. 117 at 103:20-104:1. There is no way to assess how many prospective tenants were alienated by that practice. Moreover, Defendant's claim that "once he was informed that the conduct at issue was improper, [he] changed his leases to remove the offending language," Doc. 113 at 5-6, was called into question by his testimony on cross examination. Doc. 118 at 90:14-93:7; *see supra* at n. 5 and accompanying text. Thus, although it is true that the United States introduced no evidence of previous complaints against Defendant, it is also undeniable that Defendant's discriminatory conduct was not an "isolated incident." *Campbell*, 538 U.S. at 419.

The fifth factor does not weigh in favor of either party's position. There is no evidence that the harm was the result of malice, trickery, or deceit; however, there is likewise no evidence that the harm was the result of mere accident. Therefore, the Court will not consider this factor.

In sum, four of the five factors support reprehensibility, and no factor weighs against. Because the degree of reprehensibility is the most important of the three guideposts, that finding significantly reinforces the presumption that the jury's award of punitive damages was constitutional.

### B. Disparity Between Compensatory and Punitive Damages

The second *Gore* guidepost invites examination of "the disparity between the actual or potential harm suffered by the plaintiff"—that is, compensatory damages—"and the punitive damages award." *Campbell*, 538 U.S. at 418 (citing *Gore*, 517 U.S. at 575). The ratio between the two is "perhaps [the] most commonly cited indicium of an unreasonable or excessive punitive damages award." *Gore*, 517 U.S. at 580. Although the analysis primarily focuses on the disparity between compensatory and punitive damages, it is also appropriate for the court "to consider the magnitude of the *potential harm* . . . to other victims that might have resulted if similar future behavior were not deterred." *TXO*, 509 U.S. at 460 (emphasis in original). The Supreme Court has declined "to impose a bright-line ratio which a punitive damages award cannot exceed"; however, "in practice, few awards exceeding a single-digit ratio . . . will satisfy due process." *Campbell*, 538 U.S. at 425.

The jury awarded $20,000 in punitive damages and $1,000 in compensatory damages to each child. Defendant argues that the 20-to-1 ratio of punitive damages to compensatory

damages awarded to each minor child is excessive and should be reduced.  Doc. 113 at 7-9.
Defendant offers several cases to support reduction.  *See Quigley v. Winter*, 598 F.3d 938,
955-56 (8th Cir. 2010) (reduced an award from an 18-to-1 ratio down to 4-to-1); *Szwast v.
Carlton Apts.*, 102 F. Supp. 2d 777, 784 (E.D. Mich. 2000) (reduced a punitive damages award
from $400,000 to $30,000, finding the issue of reprehensibility to be a "mixed bag"); *Walsh
v. National Computer Systems, Inc.*, 332 F.3d 1150, 1162 (8th Cir. 2003) (affirming a 3-to-1
ratio).

The United States argues that, by analyzing each child's award individually, rather
than the general damages award collectively, Defendant has improperly inflated the relevant
ratio.  Doc. 120 at 10.  According to the United States, the Erwin-Teals' damages should first
be aggregated as a whole and only then should the Court compare the two types of damages.
*Id.*  The Court agrees.  "[C]ourts must ensure that the measure of punishment is both
reasonable and proportionate to the amount of harm to the plaintiff and to the *general
damages recovered*."  *Campbell*, 538 U.S. at 426 (emphasis added).  Where a monetary
judgment will eventually be paid to multiple individuals, it is still appropriate to view the
punitive and compensatory damages collectively.  *U.S. v. Veal*, 365 F. Supp. 2d 1034, 1040 n.3
(W.D. Mo. 2004); *see also U.S. v. Big D Enters., Inc.*, 184 F.3d 924, 933 (8th Cir. 1999)
(aggregating damages among two defendants and three victims to form one determinable
ratio).  This is especially true when, as is the case here, "there is only *one* plaintiff in [the]
case—the United States of America."  *Veal*, 365 F. Supp. 2d at 1040 n.3.  In the aggregate, the
damages awarded in this case were $60,000 in punitive damages and $14,400 in
compensatory damages.  Thus, the correct ratio to scrutinize is approximately 4-to-1.[7]

The 4-to-1 ratio of aggregate punitive to compensatory damages in this case does not
so clearly violate due process that it could justify this Court overturning the jury's verdict.  It
is not a constitutionally suspect double-digit ratio.  *See Masters v. City of Independence*, 998
F.3d 827, 841 (8th Cir. 2021) (quoting *Campbell*, 538 U.S. at 425).  Moreover, some courts
have upheld higher ratios where, as here, there is a relatively low compensatory award.  *See,
e.g.*, *Veal*, 365 F. Supp. 2d at 1039-40 (upholding $1,055,000 punitive award based on a 22-

---

[7] The precise ratio is 4.167-to-1, but the residual 0.167 makes no difference to the Court's analysis.

to-1 ratio, "given the relatively low compensatory award [of $47,804], the reprehensibility . . . and the fact that the harm was primarily noneconomic").

Defendant's degree of reprehensibility is not "weak," such that "a 4 to 1 ratio would test the outer limits of acceptability." *Big D Enters.*, 184 F.3d at 933 (citing *Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 23 (1991)).  In fact, in a case where the other guideposts are strong, the Eighth Circuit has indicated that a 526-to-1 ratio may be appropriate. *Id.* (citing *TXO*, 509 U.S. at 443).

Additionally, "a defendant's financial worth is traditionally admissible for the purpose of evaluating the amount of punitive damages that should be awarded," *Big D Enters.*, 184 F.3d at 932, especially because one of the goals of punitive damages is deterrence. *Campbell*, 538 U.S. at 419 (citing *Gore*, 517 U.S. at 576-77); *TXO*, 509 U.S. at 460.  Given Defendant's net worth of more than $4 million and his long history of using the unlawful "NO CHILDREN" clause, the jury could have intended the 4-to-1 ratio as a deterrent.  Finally, Defendant himself cites several cases where ratios of 4-to-1 or higher were either upheld or imposed on reduction from an unacceptable award.  *See Quigley*, 598 F.3d at 955-56 (4-to-1); *McKee v. Reuter*, 2019 WL 6250845, at *9 (E.D. Mo. Nov. 17, 2016) (5-to-1); *Ogden v. Wax Works, Inc.*, 214 F.3d 999, 1011 (8th Cir. 2000) (6.5-to-1); *Masters*, 998 F.3d at 842 (9-to-1).  Therefore, the Court finds that the 4-to-1 ratio does not violate due process in this case.

### C.  Comparison to Civil Penalties

The third and final *Gore* guidepost directs a court to compare the punitive damages award with the potential civil penalties authorized by statute in comparable cases.  For the purposes of that comparison, aggregating the punitive damages award—i.e., taking the relevant number to be $60,000, rather than Defendant's preferred per-child amount of $20,000—works in favor of Defendant.  Nonetheless, it does not decisively support reduction of the damages award.

Defendant claims that the most comparable civil penalty is found at 42 U.S.C. § 3612(g)(3)(A).  Adjusted for inflation, that provision provides for a maximum penalty in a comparable case of $20,111.  *See* Adjustment of Civil Monetary Penalty Amounts for 2017, 82 Fed. Reg. 24,521, 24,523 (May 20, 2017).  The United States claims that the more comparable civil penalty is found at 42 U.S.C. § 3614 and 28 C.F.R. § 85.5.  Those provisions provide for a maximum penalty in comparable cases of $107,050.

The Court does not have to determine which civil penalty is more comparable to the award in this case, because the choice of comparator does not affect its conclusion.  Even assuming that Defendant is correct that the $60,000 punitive damages award is three times the $20,111 comparable civil penalty, that disparity would not outweigh the other two *Gore* factors.   The *Gore* factors are but "guideposts," and should be evaluated "as a whole."  *Gore*, 517 U.S. at 574; *Bid D Enters.*, 184 F.3d at 934.  *Gore* did not make comparable civil penalties a cap on punitive damages awards; rather, it stated that courts should afford "substantial deference to legislative judgments concerning appropriate sanctions for the conduct at issue."  517 U.S. at 574 (quotation marks and citation omitted).  Later, in a case involving a comparable civil penalty of $10,000, the Supreme Court observed that a punitive damages award "at or near" $1 million likely would have been justified.  *Campbell*, 538 U.S. at 429.  In this case, in light of the other *Gore* factors, the Court finds that the punitive damages award is justified even at three times the comparable civil penalty.

In light of the foregoing, the punitive damages awarded in this case were not grossly excessive.  The presumption of constitutionality owed to the jury's decision is reinforced by two of the three *Gore* guideposts, including the "most important" of the three.  *Boerner*, 394 F.3d at 602 (quoting *Campbell*, 538 U.S. at 419; *Gore*, 517 U.S. at 575).  Therefore, "evaluating the Gore guidepost factors as a whole," the Court concludes that the jury's award does not violate due process.  *Big D Enters.*, 184 F.3d at 934.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Rule 50 Motion to Set Aside the Punitive Damages Award, or in the Alternative, Defendant's Rule 59 Motion to Reduce the Amount of Punitive Damages Awarded (Doc. [113]) is **DENIED**.

Dated this 31st day of January, 2022.

SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE

12